NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0333n.06

Case No. 24-5613

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 09, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| ERIC LEBRON BURNEY, | ) | TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: BOGGS, McKEAGUE, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** Eric Burney appeals the district court's denial of his motion to suppress evidence of drugs found in his vehicle after he was stopped for a traffic violation. We affirm.

**I.**

On April 1, 2023, Trooper Conners and Trooper Burchett with the Tennessee Highway Patrol stopped Eric Burney for following a commercial vehicle too closely and for a window-tint violation.[1] Trooper Connors exited his squad car and approached Burney's vehicle. Burney had rolled down all four windows. Trooper Connors asked Burney for his license and registration, instructed him to step out of his vehicle, and proceeded to pat Burney down. During the pat down, Trooper Connors commented that Burney's vehicle smelled of marijuana, and Burney responded, "Yeah, I know, I smoked earlier." Trooper Connors also discovered $1,395 in cash on Burney.

---

[1] The troopers recorded the encounter on their body cameras.

Trooper Connors then directed Burney to sit in the squad car while he and Trooper Burchett searched the vehicle based on the marijuana odor. Burney confirmed that everything in his vehicle belonged to him.

The troopers conducted a thorough search. Trooper Connors initially looked for contraband under the driver's side carpet and in the trunk and found nothing. At the same time, Trooper Burchett popped out the center console screen where he found tobacco remnants and located a single Percocet pill on the driver's seat. Trooper Connors eventually pulled up the cupholders in the center console, and in doing so, he discovered a secret compartment, which held a digital scale and two plastic baggies, containing approximately 300 grams of methamphetamine.

A grand jury indicted Burney for possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). Burney moved to suppress the evidence found in his vehicle, arguing primarily that the troopers' search was overbroad. The district court denied Burney's motion, finding that the scope of the search was permissible based on, among other factors, the marijuana odor. Burney pleaded guilty to the drug offense, reserving his right to appeal the suppression decision.

**II.**

Burney appeals the district court's decision denying his motion to suppress evidence seized from the troopers' warrantless search of his vehicle.[2] "We apply a mixed standard of review to a district court's ruling on a motion to suppress." *United States v. Taylor*, 121 F.4th 590, 594 (6th Cir. 2024). We review "legal conclusions de novo" and "factual findings for clear error." *United States v. Simmons*, 129 F.4th 382, 386 (6th Cir. 2025) (citation omitted). When, as here, a district court has denied a defendant's motion to suppress, "we review all evidence in the light most

---

[2] Burney does not dispute the legality of the initial traffic stop or Trooper Connors's accompanying pat-down search.

favorable to the government." *United States v. Peake-Wright*, 126 F.4th 432, 436 (6th Cir. 2025) (quotation omitted). We may affirm a district court's suppression decision "on any ground supported by the record." *United States v. Binford*, 818 F.3d 261, 267 (6th Cir. 2016) (citation omitted).

### III.

The Fourth Amendment prohibits unreasonable searches and seizures by police officers. U.S. Const. amend. IV. Courts enforce the Fourth Amendment in criminal cases through the exclusionary rule which, when applicable, forbids the government from using "improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139 (2009). Generally, warrantless searches "are *per se* unreasonable." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quotation omitted). But "we allow warrantless searches of an automobile if officers have probable cause (i.e., a 'fair probability') to believe the car contains evidence of a crime." *United States v. Simpson*, 138 F.4th 438, 444 (6th Cir. 2025). "And in determining whether a fair probability exists, we look at the totality of the circumstances through the common-sense lens of ordinary people, not the technical lens of trained lawyers." *United States v. Whitlow*, 134 F.4th 914, 919 (6th Cir. 2025) (citation modified).

Several factors affect our probable-cause analysis. First, the troopers smelled an odor of marijuana emanating from Burney's vehicle. *See United States v. Brooks*, 987 F.3d 593, 599–600 (6th Cir. 2021) (collecting cases). Second, Burney rolled down all his windows, which reasonably indicated an attempt to dissipate the marijuana smell. *Cf. United States v. Lyons*, 687 F.3d 754, 770 (6th Cir. 2012). Third, Burney admitted that he had smoked marijuana before the stop. *See United States v. Banks*, 684 F. App'x 531, 533, 536 (6th Cir. 2017) (holding there was probable cause to search a vehicle because, among other reasons, a passenger "had admitted to smoking

marijuana earlier that day."). Fourth, Burney had more than $1,000 on his person. "Courts have readily acknowledged that large sums of cash are indicative of the drug trade." *United States v. Brooks*, 594 F.3d 488, 495 (6th Cir. 2010). Based on these facts, considered in their totality, the troopers had probable cause to search Burney's vehicle for evidence of a drug crime. So, the district court did not err in denying Burney's suppression motion.

Resisting this conclusion, Burney offers three arguments. None persuades us.

To begin, Burney asserts that officers can no longer rely on the smell of marijuana to search a vehicle because hemp—which is legal—and marijuana have a similar smell. However, in our recent decision in *United States v. Santiago*, we held that "the mere fact that [the defendant] *could* have possessed hemp did not negate the officers' reasonable ground for believing [the defendant] possessed marijuana." 139 F.4th 570, 575 (6th Cir. 2025). That same rationale applies here. *See id.*

Next, Burney argues that even if the troopers had probable cause to search his vehicle, their authority did not extend to the vehicle's internal framing, i.e., the shielded compartment in the center console where he stored a digital scale and nearly 300 grams of methamphetamine. But we have long held that "so long as probable cause justifies searching the vehicle, it justifies the search of *every* part of the vehicle and its contents that may conceal the object of the search." *United States v. Stevenson*, 43 F.4th 641, 648 (6th Cir. 2022) (citation modified). And we have applied this principle to analogous drug searches. *See, e.g.*, *United States v. Hall*, 20 F.4th 1085, 1099–1100 (6th Cir. 2022) (upholding search of the area "behind the manipulated center console of [the defendant's] truck"). Thus, given that the troopers had probable cause to search Burney's vehicle for narcotics, they were justified in searching the space beneath the center console cupholders as

it was "capable of hiding drugs." *See United States v. Stubblefield*, 682 F.3d 502, 507 (6th Cir. 2012).

Last, Burney contends that the district court erred in relying on Trooper Connors's testimony that there were "pry marks" near the driver's seat and the "carpet was unusually loose" to justify the expansive search of Burney's vehicle. Relatedly, Burney has moved to supplement the record on appeal with evidence undermining Connors's credibility and to strike the government's brief for impermissibly expanding the record with facts supporting Connors's testimony. Yet, as discussed above, the troopers had probable cause to execute their search—in scope and kind—before they entered Burney's vehicle.

**IV.**

For these reasons, we **AFFIRM** the district court's judgment. We **DENY** Burney's motion to supplement the record on appeal, his motion to strike the government's brief, and his related motions to extend the time to file reply briefs in support of those motions.